UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| AARON M. SAMMONS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:10-CR-131 |
| | ) | 2:14-CV-26 |
| UNITED STATES OF AMERICA[1], | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion of Aaron M. Sammons ("Sammons" or "petitioner") to vacate, set aside or correct sentence, [Doc. 54 [2], supplemented by Docs. 59, 61]. The United States has responded in opposition, [Doc. 58], and the matter is now ripe for disposition. The Court has determined that the records and files in the case conclusively establish that petitioner is not entitled to relief under 28 U.S..C § 2255 and that no evidentiary hearing is necessary. For the reasons which follow, petitioner's motion to vacate, set aside or correct sentence will be DENIED and the case, (No. 2:14-CV-26) will be DISMISSED WITH PREJUDICE.

**I.   Factual and Procedural Background**

Petitioner was charged with being a felon in possession of a firearm (Count One), and possession with a firearm with an obliterated serial number (Count Two) in an indictment returned by a federal grand jury on November 9, 2010, [Doc. 3]. The Federal Defender was initially appointed to represent Sammons, [Doc. 9], but was subsequently replaced by retained counsel, [Docs. 13, 14]. Petitioner signed a written plea agreement on February 22, 2011, [Doc.

---
[1]  Petitioner's motion named Karen Edenfield, Warden, FCI Manchester, as the respondent in this case. The Court has substituted the United States of America as the proper respondent.
[2]  All docket numbers refer to the docket sheet in No. 2:10-CR-131.

1

26], agreeing to plead guilty to Count One. On March 1, 2011, the Court accepted his guilty plea, ordered a presentence investigation report ("PSR"), and set sentencing for July 18, 2011, [Doc. 27].

The plea agreement stated that "[t]he punishment for this offense is as follows: up to 10 years imprisonment, a maximum fine of $250,000, three years of supervised release, and $100.00 mandatory assessment." During the plea colloquy, however, petitioner was informed that he "might be subject to a maximum term of life as well as a 15-year mandatory minimum sentence" if he was determined to be an armed career criminal ("ACC"). [Doc. 50 at 14]. Indeed, because the plea agreement did not make reference to the Armed Career Act ("ACCA"), the Court went to great lengths to assure that Sammons was aware of the possible maximum and minimum sentences if he was determined to be ACC. After Sammons was informed of the penalty provisions stated in his plea agreement, the following exchange took place:

> MR. BOWMAN: . . . IN ADDITION, YOUR HONOR, ALTHOUGH NOT INDICATED IN THE PLEA AGREEMENT, I WAS JUST LOOKING THROUGH THE DEFENDANT'S PRIOR CRIMINAL HISTORY, I THINK THERE IS A POSSIBILITY THAT THE ACC PROVISIONS WOULD APPLY IN THIS CASE, YOUR HONOR, WHICH, OF COURSE, WOULD MAKE UNDER TITLE 18, UNITED STATES CODE, SECTION 924(E)(1) A MINIMUM AND MANDATORY 15 YEAR TERM OF IMPRISONMENT IF THE DEFENDANT WERE DETERMINED TO HAVE THREE PRIOR VIOLENT FELONY OR SERIOUS DRUG OFFENSES COMMITTED ON DIFFERENT OCCASIONS FROM ONE ANOTHER.
> THE COURT: ALL RIGHT, MR. BOWMAN, THANK YOU.
> Q. MR. SAMMONS, THE PLEA AGREEMENT YOU'VE ENTERED INTO PROVIDES THAT THE PUNISHMENT FOR THIS OFFENSE IS UP TO A 10 YEAR TERM OF IMPRISONMENT, A MAXIMUM $250,000 FINE, 3 YEARS OF SUPERVISED RELEASE AND A $100 MANDATORY ASSESSMENT. TITLE 18, UNITED STATES CODE, SECTION 924(E)(1), HOWEVER, PROVIDES THAT IN THE CASE OF A PERSON WHO VIOLATES TITLE 18, UNITED STATES

CODE, SECTION 922(G)(1) AND WHO HAS COMMITTED ON OCCASIONS DIFFERENT FROM ONE ANOTHER THREE SERIOUS VIOLENT FELONIES OR SERIOUS DRUG OFFENSES, THEN THAT PERSON IS SUBJECT TO A MANDATORY MINIMUM TERM OF 15 YEARS OF IMPRISONMENT UP TO A MAXIMUM OF LIFE IMPRISONMENT. NOW, I DON'T KNOW WHETHER YOU AND MR. HESS HAVE DISCUSSED THE POSSIBILITY THAT YOU ARE WHAT'S COMMONLY REFERRED TO AS AN ARMED CAREER CRIMINAL PURSUANT TO SECTION 922, EXCUSE ME, 924(E)(1) OR NOT, BUT IT APPEARS THAT THE POTENTIAL MAXIMUM PENALTY TO WHICH YOU ARE EXPOSED BY THIS GUILTY PLEA IS CONSIDERABLY MORE THAN IS SET OUT IN THIS PLEA AGREEMENT. I CANNOT DETERMINE WHETHER OR NOT YOU ARE SUBJECT TO SECTION 924(E)(1) UNTIL A PRESENTENCE REPORT IS PREPARED. I SIMPLY NEED TO MAKE SURE THAT YOU ARE AWARE THAT THE MAXIMUM TERM OF IMPRISONMENT IF YOU ARE AN ARMED CAREER CRIMINAL, THAT IS IF YOU HAVE THE PRIOR REQUISITE VIOLENT FELONY OR SERIOUS DRUG OFFENSES COMMITTED ON OCCASIONS DIFFERENT FROM ONE ANOTHER, THAT YOU WILL BE THEN SUBJECT TO A MAXIMUM TERM OF LIFE IMPRISONMENT.

A. I UNDERSTAND.

Q. DO YOU UNDERSTAND THAT?

A. I UNDERSTAND THAT, YOUR HONOR.

THE COURT: MR. HESS, IS THAT SOMETHING YOU AND THE DEFENDANT HAVE DISCUSSED?

MR. HESS: WE HAVE, YOUR HONOR; AND BASED UPON THE CRIMINAL HISTORY THAT WE HAVE, AND I THINK WE HAVE IT ALL, IN MY CONVERSATIONS WITH HIM, JUST SO THE COURT UNDERSTANDS, HE DOES HAVE AN AGGRAVATED BURGLARY CHARGE, AND WE'VE DISCUSSED THAT CHARGE AND WHETHER OR NOT THAT'S CONSIDERED A VIOLENT CRIME, AND AS WELL AS THE OTHER CHARGES, MOST OF WHICH ARE BURGLARY OR THEFT CHARGES.

Q. ALL RIGHT. HERE'S THE BOTTOM LINE, MR. SAMMONS, I DON'T WANT YOU TO GO FORWARD WITH

> THIS GUILTY PLEA TODAY WITH A MISTAKEN UNDERSTANDING THAT YOU MIGHT SIMPLY BE SUBJECT TO A 10 YEAR MAXIMUM TERM OF IMPRISONMENT, WHEN IN FACT YOU MIGHT BE SUBJECT TO A MAXIMUM TERM OF LIFE, AS WELL AS A 15 YEAR MANDATORY MINIMUM SENTENCE. DO YOU UNDERSTAND THAT?
>
> A. YES, SIR.
>
> Q. AND IN VIEW OF THAT, DO YOU WANT TO GO FORWARD WITH THIS GUILTY PLEA TODAY?
>
> A. YES, SIR.
>
> Q. AND, MORE SPECIFICALLY, DO YOU UNDERSTAND THAT I CANNOT DETERMINE TODAY WHETHER OR NOT YOU ARE IN FACT AN ARMED CAREER CRIMINAL AS DEFINED IN SECTION 924(E)(1)?
>
> A. YES, SIR.
>
> Q. YOU UNDERSTAND THAT THAT DETERMINATION CAN ONLY BE MADE AFTER A PRESENTENCE REPORT IS PREPARED AND BOTH YOU AND THE GOVERNMENT HAVE HAD AN OPPORTUNITY TO OBJECT TO THAT PRESENTENCE REPORT?
>
> A. YES, SIR.
>
> Q. NOW, VERY IMPORTANTLY, MR. SAMMONS, DO YOU UNDERSTAND THAT IF THIS COURT LATER DETERMINES THAT YOU ARE AN ARMED CAREER CRIMINAL WITHIN THE MEANING OF SECTION 924(E)(1), YOU WILL THEN BE SUBJECT TO A MANDATORY MINIMUM TERM OF 15 YEARS OF IMPRISONMENT?
>
> A. YES, SIR.
>
> Q. DO YOU UNDERSTAND THAT ABSENT A GOVERNMENT MOTION FOR DOWNWARD DEPARTURE OR SOME OTHER VERY EXTRAORDINARY CIRCUMSTANCE, THIS COURT WOULD THEN HAVE NO DISCRETION TO IMPOSE ANY SENTENCE OF IMPRISONMENT OF LESS THAN 15 YEARS?
>
> A. YES, SIR.

[*Id*. at 11-15]. After reviewing the appellate and collateral review waivers of the plea agreement, the Court further informed petitioner of the possibility that the language of the waiver was "broad enough to include a waiver of [his] right to appeal this Court's determination as to whether or not [he was] an armed career criminal." [*Id*. at 17]. The Court confirmed that the government read the waiver in that manner, that petitioner understood that was what he had agreed to, and what he

4

"intended to agree to." [*Id*.]. Finally, the Court, before actually accepting the petitioner's guilty plea, confirmed once again that petitioner understood the possibility that he was ACC and that he still wanted to plead guilty.

> Q. AND IF THE COURT LATER DETERMINES THAT YOU ARE IN FACT AN ARMED CAREER CRIMINAL SUBJECT TO THE PROVISIONS OF TITLE 18, UNITED STATES CODE, SECTION 924(E)(1), THEN REGARDLESS OF WHAT YOUR ADVISORY GUIDELINE RANGE MIGHT BE, THE COURT WOULD HAVE THE AUTHORITY TO IMPOSE A LIFE TERM OF IMPRISONMENT?
> A. I UNDERSTAND, SIR.
> Q. AND IF THE COURT DETERMINES THAT YOU ARE AN ARMED CAREER CRIMINAL, DO YOU UNDERSTAND THAT, AGAIN, REGARDLESS OF WHAT YOUR ADVISORY GUIDELINE RANGE MIGHT BE, THE COURT WILL BE REQUIRED TO IMPOSE AT LEAST A 15 YEAR MANDATORY MINIMUM TERM OF IMPRISONMENT REQUIRED BY STATUTE?
> A. YES, SIR.
>
> Q. UNDERSTANDING ALL THAT, DO YOU STILL WANT TO PLEAD GUILTY HERE TODAY?
> A. YES, SIR.
> Q. DO YOU ALSO UNDERSTAND THAT UNDER SOME CIRCUMSTANCES YOU, SUBJECT, OF COURSE, TO THE WAIVERS YOU HAVE AGREED TO IN YOUR PLEA AGREEMENT, OR THE GOVERNMENT MAY HAVE THE RIGHT TO APPEAL ANY SENTENCE THAT IS ULTIMATELY IMPOSED?
> A. YES, SIR.
> THE COURT: MR. HESS, HAVE YOU MADE ANY REPRESENTATION TO THE DEFENDANT AS TO WHAT SENTENCE THE COURT MIGHT IMPOSE IN HIS CASE OTHER THAN TO GIVE HIM AN ESTIMATE AS TO HIS ADVISORY GUIDELINES RANGE AND TO ADVISE HIM AS TO THE POSSIBLE APPLICABILITY OF THE PROVISIONS OF SECTION 924(E)(1)?
> MR. HESS: NO, YOUR HONOR. WE'VE ONLY DISCUSSED ALL THE POSSIBILITIES THAT THE COURT COULD ULTIMATELY DECIDE.
> Q. NOW, MR. SAMMONS, WITH RESPECT TO ANY ESTIMATE THAT YOUR ATTORNEY MAY HAVE GIVEN YOU AS TO YOUR ADVISORY GUIDELINE RANGE, DO

5

> YOU UNDERSTAND THAT THAT'S SIMPLY YOUR LAWYER'S BEST ESTIMATE AS TO THAT RANGE?
> A. YES, SIR.
> Q. AND, LIKEWISE, WITH RESPECT TO ANY ADVICE OR ESTIMATION THAT YOUR ATTORNEY HAS MADE FOR YOU WITH RESPECT TO WHETHER OR NOT YOU QUALIFY AS AN ARMED CAREER CRIMINAL, DO YOU ALSO UNDERSTAND THAT THAT'S SIMPLY HIS BEST ESTIMATE BASED ON THE INFORMATION HE NOW HAS AS TO WHETHER OR NOT THAT STATUTE APPLIES TO YOU?
> A. YES, SIR.
> Q. AND DO YOU UNDERSTAND, VERY IMPORTANTLY, THAT THIS COURT IS NOT BOUND BY YOUR ATTORNEY'S ESTIMATE AS TO YOUR ADVISORY GUIDELINES RANGE, NOR IS THE COURT BOUND BY YOUR ATTORNEY'S ESTIMATE AS TO WHETHER OR NOT YOU ARE IN FACT AN ARMED CAREER CRIMINAL UNDER THE STATUTE?
> A. YES, SIR.

[*Id.* at 20-22].

The PSR was disclosed on June 22, 2011. The report disclosed that petitioner had four prior Tennessee burglary convictions, [PSR at ¶¶ 35, 36, 37, 39], and one conviction for aggravated burglary. [*Id.* at ¶ 38]. Based on these prior convictions, Sammons was deemed by the probation officer to be ACC under 18 U.S.C. § 924(e) and subject to a mandatory minimum sentence of 15 years and a maximum of life. [*Id.* at ¶¶ 23, 43, 60, 61]. Petitioner, through counsel, objected to the ACC designation, arguing that the prior burglary offenses were not violent felonies and not committed on occasions different from one another. [Docs. 31, 37]. The Court heard argument on the objection on July 18, 2011, [Doc. 40 at 4-15], and overruled the objection, [*id.* at 15-22]. The Court then imposed the mandatory minimum 15-year sentence, [Doc. 38], and judgment was entered on July 29, 2011, [Doc. 39].

Petitioner appealed the judgment, [Doc. 42], and the Sixth Circuit affirmed the district court's judgment on October 26, 2012, [Doc. 51]. Petitioner did not seek a writ of certiorari to the

6

United States Supreme Court, and the judgment became final on January 24, 2013, upon the expiration of the 90-day period for seeking a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 525 (2003). The instant § 2255 motion was then timely filed on January 23, 2014. [Doc. 54].

**II.     Standard of Review**

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case);

7

*Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of counsel's performance is

8

Case 2:10-cr-00131 Document 63 Filed 02/27/17 Page 8 of 16 PageID #: 258

> "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of the time of counsel's conduct." *Id*. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. ––––, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

### III. Analysis

Petitioner's motion[3] raises two grounds for relief under § 2255: first, that counsel repeatedly reassured him that he would not be ACC, and second, that, if he signed the plea agreement, he would receive a sentence between 35-50 months. The Court will address these in turn.

#### A. Counsel's Assurances

Petitioner asserts, without filing a supporting affidavit or even signing his motion under penalty of perjury, that he "was repeatedly assured by [counsel] that he would not be designated an Armed Career Criminal by the United States Probation Officer or this Court." [Doc. 54 at ¶ 22]. This bald conclusory assertion is insufficient to meet petitioner's burden of setting forth "facts" which entitled him to relief, *see Greene,* 454 F.2d at; *O'Malley*, 285 F.2d at ("conclusions, not supported by allegations of fact with some probability of verity, are not

---

[3] Petitioner's motion, filed by counsel, is not filed on the form appended to the rules for § 2255 proceedings and only minimally follows the form. The motion is not signed by Sammons under penalty of perjury (or by a person authorized to sign for him). *See* Rule 2, Rules Governing Section 2255 Proceedings in the United States District Courts. The Court will not dismiss the petition on that basis, however, even though petitioner is not proceeding pro se but rather through retained counsel who is presumed to know the requirement of the rule.

9

sufficient to warrant a hearing."), and likewise is not sufficient to overcome the strong presumption of verity" that attaches to petitioner's sworn testimony at the time of his change of plea. *Blackledge v. Allison*, 431 U.S. 63, 73 (1977).

Even if the Court assumes deficient performance on the part of trial counsel, petitioner cannot establish prejudice, despite his conclusory allegation that he "would not have entered a plea of guilty in this cause had he been properly advised." [Doc. 54 at ¶ 52]. That claim is flatly contradicted by the record in the case. To the extent petitioner was misadvised because of counsel's "failure to understand the nature of the charge, the plea agreement, and the Armed Career Criminal Act," [*id*. at ¶ 48], he was clearly disabused of that misunderstanding by this Court during the plea colloquy. The Court clearly and unequivocally advised the petitioner that he might be classified as ACC and, if so, face 15-years to life imprisonment. Petitioner just as clearly and unequivocally acknowledged his understanding, and that he wanted to plead guilty in spite of the possibility. More importantly, petitioner testified that he understood that any "advice or estimation" by his attorney as to whether he was ACC was simply that and that he understood that the Court "is not bound" by that advice from his attorney. He unhesitatingly asserted that he still wanted to plead guilty even though the Court might impose the 15-year mandatory minimum sentence, or even a sentence of life. In light of that testimony, petitioner is now bound by his responses made during the plea colloquy. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986); *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

Petitioner's claim that he was assured of a sentence of 35-50 months is likewise contradicted by the record. First of all, the claim is contradicted by the express terms of petitioner's plea agreement. The agreement, which Sammons testified he had read, fully understood, and signed, [Doc. 50 at 6], provided that "[t]he Court may impose any lawful term(s)

10

of imprisonment," [Doc. 26 at ¶ 6(b)] that "[a]ny estimates or predictions made to defendant by defense counsel or any other person regarding a potential sentence are not binding on the Court," that he understood "that the sentence . . . will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties," and "that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a)." [*Id*. at ¶ 6(c)]. Secondly, petitioner's sworn testimony contradicts his assertion as well. He clearly and unequivocally testified that no promise, except for those contained in the plea agreement, or threat had been made to induce him to plead guilty and that he understood the potential of a 15-year mandatory minimum sentence. [Doc. 50 at 8, 12, 14, 20]. He testified that he understood that the Court could not determine the advisory guideline range which applied to his case or an appropriate sentence until a PSR was prepared and that the Court would consider the advisory guideline range and the 18 U.S.C. § 3553(a) factors before deciding on a sentence. [*Id*. at 18-19]. Counsel confirmed that he had made no "representation to the defendant as to what sentence the Court might impose in [petitioner's] case" except to estimate his advisory guideline range and petitioner further testified that he was aware his attorney's estimate was not binding on the Court. [*Id*. at 21-22]. Petitioner is now likewise bound by these under oath statements.

    **B.    Armed Career Criminal Act**

In his motion, Sammons argues that since only generic burglaries count towards ACC status, "the proof did not show that his prior convictions were for 'generic burglary.'" [Doc. 54 at ¶ 33]. He further argues that "at least two (2) of the four (4) subdivisions of Tennessee's Burglary Statute are not 'generic burglaries' under the ACCA," [*Id*. at ¶ 35]. Citing *Descamps v. United*

11

Case 2:10-cr-00131   Document 63   Filed 02/27/17   Page 11 of 16   PageID #: 261

*States*, 133 S. Ct. 2276 (2013), he claims that Tennessee's burglary statute is "divisible," [*id*. at ¶ 45], and he asserts that "updated case law," specifically *United States v. Jones*, 673 F.3d 497 (6th Cir. 2012), *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990), "may prove beneficial, however tangentially so, to Mr. Sammons." [Doc. 59].[4] Somewhat liberally construed, it appears the motion faults counsel for not effectively arguing that petitioner's prior burglaries were not proper predicate offenses for ACCA purposes. Because counsel cannot be ineffective for not raising meritless issues, *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999), and because petitioner's prior burglary convictions continue to qualify as ACCA predicates, this claim fails.

The ACCA mandates a 15-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force-clause") (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense-clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual-clause"). 18 U.S.C. § 924(e)(2)(B). The third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the United States Supreme Court in *Johnson v. United States*, 135 S. Ct. 2251 (2015).[5] The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the-

---

[4] Petitioner, through counsel, filed this "Notice of Supplemental Authority" on February 4, 2016. Counsel filed a second "Notice of Supplemental Authority" on February 10, 2016, which appears to be identical to the first. [Doc. 61].

[5] Petitioner has not specifically raised a claim under Johnson since it appears that his predicate offenses fall under the enumerated-offense clause.

12

use- of physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682-83 (6th Cir. 2015).

The validity of petitioner's sentence thus depends on whether three or more of his prior convictions qualify as "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g., United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015). To determine whether a particular offense qualifies as a violent felony under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps*, 133 S. Ct. at 2285. They do so by employing a "categorical approach," under which they look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[ ]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative forms the basis of the defendant's prior conviction." *Id.* at 2281.

For purposes of a § 924(e) enhancement, the Supreme Court has defined "burglary" as any conviction, "regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Tennessee law provides that a person commits burglary when "without the effective consent of the property owner," he:

> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft, or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft, or assault at a building;
>
> (3) Enters a building and commits or attempts to commit a felony,

13

>theft, or assault; or
>
>(4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehich with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402(a). The first three subdivisions of that definition constitute Class D felonies, while the fourth is a Class E felony. *See* Tenn. Code Ann. § 39-14-402(c)-(d). All but one of the foregoing categories--entering a freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle--satisfy T*aylor's* generic definition--"unlawful or unprivileged entry into, or remaining in a building or structure with intent to commit a crime." *See Descamps*, 133 S. Ct. at 2284 (explaining a statute is "divisible" when it "list[s] potential offense elements in the alternative"); *see also United States v. Moore*, 578 Fed. App'x 550, 553 (6th Cir. 2014) (finding that Tennessee Code Annotated § 39-14-402 is divisible under *Descamps*); *United States v. Mitchell*, 743 F.3d 1054, 1065 (6th Cir. 2014) ("the ordinary use of the conjunction 'or' is almost always disjunctive, that is, the words it connects are to be given separate meanings." (internal quotations omitted).

As noted above, the PSR establishes, and petitioner does not argue otherwise, that he had sustained four prior convictions for burglary. The first was committed on September 11, 2006, in Sullivan County, Tennessee. "According to the indictment, the petitioner "did unlawfully . . . enter Headhunter Hair Salon, said building was not open to the public . . . without the effective consent of the said owner and with intent to commit theft." [PSR at ¶ 35]. The second burglary was committed on September 12, 2006, and court documents establish that petitioner broke into a business and committed the offense of theft. [*Id*. at ¶ 36]. The third burglary was committed on September 13, 2006, and the indictment charged that the petitioner entered the building and committed a theft. [*Id*. at ¶ 37]. The fourth burglary was committed on January 12, 2010, and the

14

indictment charged that petitioner "did unlawfully and feloniously enter a building . . . without the effective consent of the property owner and did commit a theft therein." [*Id*. at ¶ 39]. Petitioner pled guilty to the first three burglaries on January 10, 2008, [*id*. at ¶¶ 35, 36, 37], and to the fourth on July 8, 2010, [*Id*. at ¶ 30]. In each case, he received four years of incarceration and it is undisputed that each conviction was for a Class D felony. [Doc. 54 at ¶ 34].

Petitioner concedes that violations of § 39-14-402(a)(1) and (2) are generic burglaries but argues that convictions under (a)(3) and (a)(4) are not violent felonies. He is correct about subsection (a)(4), and the government acknowledges that. The parties disagree about convictions under (a)(3). Subdivisions (a)(3) requires only that a felony be committed or attempted once the perpetrator enters the building, *see State v. Wesemann*, 1995 WL 605442, at * 2 (Tenn. Crim. App. October 16, 1995), and petitioner argues that (a)(3) lacks the "intent" element required by *Taylor's* definition of generic burglary. Petitioner relies on a Fifth Circuit case, *United States v. Herrera-Montes*, 490 F.3d 390, 392 n. 2 (5th Cir. 2007), as support. Of course, *Herrera-Montes* is not binding precedent on this Court. *Timmereck v. United States*, 577 F.2d 372, 374 n. 6 (6th Cir. 1978). In any event, the Fifth Circuit's analysis of Tennessee Code Annotated § 39-14-402(a)(3) appears misplaced. As noted, *Taylor's* definition of generic burglary includes "unlawful or unprivileged . . . remaining in a building with intent to commit a crime." *Taylor*, 495 U.S. at 599. Subsection (a)(3) clearly meets that definition; it necessarily involves the intent element of generic burglary. As the government notes, "[a] defendant who enters a building and, while inside, subsequently commits or attempts to commit a felony will necessarily have remained inside the building with the intent to commit a crime." [Doc. 58 at 9]. Since none of petitioner's convictions were for entering a "freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle," each satisfies *Taylor's* definition of generic burglary.

## IV. Conclusion

For the reasons set forth herein, petitioner's § 2255 motion, [Doc. 54], will be DENIED and the case (No. 2:14-CV-26) DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
